Thurman Eugene GOODMAN,
Appellant–Respondent,

v.

STATE of Indiana, Appellee–Petitioner.

No. 55A01–9209–CV–300.

Court of Appeals of Indiana,
First District.

April 6, 1993.

Rehearing Denied May 18, 1993.

Transfer Denied July 20, 1993.

Loretta Lauer, Gregory T. Lauer, Martinsville, for appellant-respondent.

Linley E. Pearson, Atty. Gen., Daniel E. Morris, Deputy Atty. Gen., Indianapolis, for appellee-petitioner.

NAJAM, Judge.

### STATEMENT OF THE CASE

Thurman Eugene Goodman ("Thurman") appeals a judgment of paternity and an

order that he pay a child support arrearage of $3,050.00 to the Indiana Family and Social Services Administration ("Administration"). We affirm in part, reverse in part, and remand.

## ISSUES

We consider the following issues on appeal:

1. Was the evidence sufficient to establish Thurman's paternity?

2. Was the order that Thurman pay a $3,050.00 child support arrearage to the Administration barred by the five-year statute of limitations under IND.CODE § 31–6-6.1–6(c)?

## FACTS

Misty Michelle DeMoss ("Misty") gave birth to a child out of wedlock on January 3, 1984. In order to support the child, Misty obtained public assistance from the Administration as provided by the federal Aid to Families with Dependent Children ("AFDC") Program. In exchange for that assistance, she executed an assignment of her child support rights to the Administration pursuant to IND.CODE § 12–14–7–1.

As the next friend of the child, the State of Indiana filed a verified petition to establish paternity on January 22, 1990, asking that Thurman be determined the biological father of the child and that he be required to fulfill his resulting support obligations.

In March of 1990, the trial court conducted a paternity hearing at which Misty testified regarding her sexual relationship with Thurman. She testified to numerous sexual encounters with Thurman beginning in February of 1983 and ending during the first part of April of 1983. Record at 75–83. Misty stated that she was not sexually involved with anyone else during that time. Record at 75–83 and 102–03. She recalled that her last menstrual cycle occurred during the first week of February of that year. Record at 75–83 and 102–03. Blood tests ordered by the court were also admitted and could not exclude Thurman as the biological father of the child. Thurman's probability of paternity was shown by the

test to be 99.97 percent. Record at 127–30. Based upon this evidence, the court found that Thurman was the natural father of the child and ordered that he pay current child support in the sum of $25.00 per week and a child support arrearage of $3,050.00 to the Administration.

## DISCUSSION AND DECISION

### *Issue One: Sufficiency of the Evidence*

 The first issue is whether there was sufficient evidence for the trial court to find that Thurman is the biological father of the child. We are not permitted to reweigh the evidence or to question the credibility of witnesses. *In re Paternity of Bratcher* (1990), Ind.App., 551 N.E.2d 1160, 1162. Instead, we must look only to the evidence most favorable to the judgment and the reasonable inferences that follow from that evidence. *Id.* at 1162. If the evidence has sufficient probative value to sustain the trial court judgment, the judgment will not be overturned on appeal. *H.W.K. v. M.A.G.* (1981), Ind.App., 426 N.E.2d 129, 132; *Roe v. Doe* (1972), 154 Ind.App. 203, 213, 289 N.E.2d 528, 535.

 Thurman argues that based on Misty's testimony, it is biologically impossible for him to be the father of the child. In support of his position he points to Misty's testimony that her last menstrual cycle was in the early part of February, 1983. Because the child was born on January 3, 1984, if Misty had conceived in February, he argues that she would have carried the child for more than ten months. However, the determination of an individual gestation period is not an exact science. What is a normal menstrual cycle and term of gestation for one woman may not be normal for another. Given her testimony of frequent sexual activity during March and early April, it is possible that Misty conceived in either of those months. The fact that she did not menstruate as usual in March can be explained by the possibility that she had conceived in early March, or that her cycle had simply become irregular, and there-fore, that she conceived later in March or early in April. In either case, allowing for a typical nine-month gestation period, the

child would have been born some time in December or early January. In fact, Misty's original due date was December 10, 1983, and was later changed to December 25, with the child being delivered on January 3, 1984. Record at 133. Children are often born within one or two weeks of their due date, and here the child's date of birth is consistent with conception having occurred during the time of frequent sexual activity between Thurman and Misty.

As this court explained in *Roe:*
"While in a paternity action the burden is on the mother to prove that the defendant is the father of the child, the testimony of the mother regarding an act of sexual intercourse with the defendant coupled with the probability of pregnancy is sufficient to support a determination that the defendant is the father of the child."

*Id.* 289 N.E.2d at 535. Mere "possibility" of pregnancy, however, will not be sufficient to establish paternity.[1] Misty testified to specific acts of sexual intercourse with Thurman occurring during February, March and April of 1983. Record at 75-83. She testified that she was not having sexual relations with anyone other than Thurman during that time. Record at 75-83 and 102-03. Her last menstrual cycle was in February of 1983, and she delivered the child in January of 1984; thus, it is probable that she conceived during the time when she was sexually involved with Thurman and that he is the father of her child.

The trial court also considered evidence of a blood test that could not exclude Thurman as the child's father, and in fact, indicated a 99.97 percent probability of paternity. *See* IND.CODE § 31-6-6.1-8; Record at 127. After examining the evidence most favorable to the judgment of the trial court, we conclude that there was sufficient evidence from which the trial court could find that Thurman was the biological father of the child. Thus, we affirm on this issue.

---

**1.** We acknowledge the distinction articulated in *Beaman v. Hedrick* (1970), 146 Ind.App. 404, 411, 255 N.E.2d 828, 832: "An act of intercourse coupled with the 'probability' of conception at

### *Issue Two: Statute of Limitations*

Thurman next disputes the trial court's order that he pay a $3,050.00 child support arrearage to the Administration. He contends that the State is barred by the statute of limitations under IND.CODE § 31-6-6.1-6(c) from bringing an action to secure reimbursement for past public assistance furnished for the child. The statute provides:

"If public assistance has been furnished for the child by the division of family and children and an assignment of support rights under Title IV-D of the federal Social Security Act (42 U.S.C. 651 et seq.) has been executed on behalf of the child, an action may be filed by the division of family and children or the county department of public welfare before the child's fifth birthday."

IND.CODE § 31-6-6.1-6(c).

The statute of limitations is an affirmative defense. *T.C.S. by State, DPW v. Ellis* (1991), Ind.App., 576 N.E.2d 633, 634. A petition to establish paternity requires no responsive pleading. *Id.* Thus, under Trial Rule 12(B), Thurman properly preserved his statute of limitations objection for appeal through his motion to dismiss made at trial. *Id.* at 635.

This paternity action was authorized under IND.CODE § 31-6-6.1-2(a)(4). The State properly filed a petition to establish paternity as the next friend of the child, who was incompetent to bring his own action by reason of his age. See *Hood v. Elliott* (1992), Ind.App., 599 N.E.2d 237, 241. A child may file a petition to establish paternity at any time before his twentieth birthday. IND.CODE § 31-6-6.1-6(b). This child was six years old when the action was filed.

The State asserts three grounds to support its contention that the five-year statute of limitations under IND.CODE § 31-6-6.1-6(c) does not apply. The State first maintains that the child, not the State,

that time will support a determination of paternity. An act of intercourse plus the 'possibility' of conception, however, as a matter of law, cannot serve to support such determination."

filed the petition. In its petition, the State has combined two actions, an action as the next friend of the child under IND.CODE § 31–6–6.1–6(b) to establish paternity, and an action in its own name for reimbursement for public assistance furnished for the child, pursuant to IND.CODE § 12–1–10–6. We are not persuaded that the State can avoid the five-year time limitation merely by asserting its claim for a support arrearage in the same paternity action in which the State is acting as the child's next friend. We conclude that the State cannot use its status as the child's next friend to extend the statute of limitations for recovery on a support assignment.

The State next contends that the five-year statute of limitations does not apply because the State acquired its right to collect support arrearage from Misty's assignment of support rights and not by filing an independent action. Here, as in *Ellis*, the petition was commenced after an AFDC recipient had assigned her support rights, and the petition discloses on its face that more than five years had expired since the birth of the child. IND.CODE § 31–6–6.1–6(c) specifically provides that if public assistance has been furnished for a child by the division of family and children, and an assignment of support rights has been executed, the State must file a paternity action before the child's fifth birthday.

The State argues that while the statute limits the State's right to bring an action for paternity, it does not limit the State's right to bring an action to recover public assistance under an assignment of support rights. The State's position cannot be reconciled with the statute. A paternity determination is obviously a condition precedent to the State's right of action under IND.CODE § 31–6–6.1–6(c) against the responsible party for reimbursement of public assistance.

■ We conclude that if the State is barred under IND.CODE § 31–6–6.1–6(c) from bringing a paternity action, then it is also barred under the statute from bringing an action to recover support under that statute. It would be incongruous to utilize the same assignment of support rights which is a condition precedent to a paternity action under the statute to extend the State's right to bring an action to collect a child support arrearage beyond the child's fifth birthday. We cannot approve this result when the assignment of support rights which gives the State a cause of action under the statute appears in the same sentence as the five-year statute of limitations.

Additionally, the State suggests that the statute of limitations contained in IND. CODE § 31–6–6.1–6(c) is inconsequential because Misty remains obligated under the assignment to reimburse the State for any child support payments she might receive pursuant to IND.CODE § 12–14–7–1. However, we find that there is an unmistakable distinction between these statutes. As Misty's assignee the State is generally entitled to receive whatever child support she might be paid, but after the child's fifth birthday the State itself is barred from bringing an action against Thurman on that assignment to recover past child support.

There is a conflict inherent in the State's dual role and in its attempt to utilize a legal fiction. Here, the State has filed a petition to establish paternity as the next friend of the child. In the same action the State also attempts to recover child support in its own name. Because it would be time-barred from bringing such an action under IND.CODE § 31–6–6.1–6(c), the State should not be permitted to collect a child support arrearage for itself in the child's action while acting as the child's next friend. In sum, we conclude that the State cannot accomplish indirectly what it cannot accomplish directly.

■ Finally, the State contends that the order to pay $3,050.00 in support arrearage should stand because, in any event, the State has an independent right to bring suit for reimbursement of public assistance under IND.CODE § 12–14–22–10.[2] However,

---

**2.** We note that IND.CODE § 12–1–10–6, which became effective March 11, 1986 and was relied upon in the State's petition, was replaced by IND.CODE § 12–14–22–10, effective February 14, 1992.

this statute clearly presumes that paternity is undisputed or that paternity has been established at some time prior to filing the action. As such, this general statute cannot be utilized to circumvent the specific five-year statute of limitations under IND. CODE § 31–6–6.1–6(c) which applies where, as here, an action for recovery of public assistance is derived from an assignment of support rights.

Thus, after paternity has been established, the State may bring an action to recover from Thurman the amount of public assistance paid, pursuant to IND.CODE § 12–14–22–10, the statute in effect when the paternity determination was made. However, this would be an independent action and would not be derived from Misty's assignment.

 We agree with the trial court's observation that there is some confusion in the application of these statutes. When construing a statute we must arrive at the apparent intention of the legislature. *Sidell v. Review Board of Indiana Employment Security Division* (1981), Ind.App., 428 N.E.2d 281, 284. Statutes relating to the same general subject matter are *in pari materia*, and should be construed together to produce a harmonious statutory scheme. *Darlage v. Drummond* (1991), Ind.App., 576 N.E.2d 1303, 1307. Further, a general statute does not overrule or supersede a specific statute unless the intent to do so is clear. *Id.* Here the statutes all concern the State's right to recover public assistance from a responsible party. We doubt that the legislature intended to create a specific statute of limitations under IND.CODE § 31–6–6.1–6(c) where there has been an assignment of support rights, which statute could be completely circumvented by reliance on another statute creating a general cause of action for the State to recover public assistance from a responsible party.

We hold that where there has been an assignment of support rights for public assistance, IND.CODE § 31–6–6.1–6(c) requires both that the State bring a paternity action under that statute before the child's fifth birthday and that the State bring an action to recover public assistance based on that assignment before the child's fifth birthday. The State cannot avoid the five-year statute of limitations, and the trial court's $3,050.00 child support arrearage order was erroneous because the State's action was untimely.

We emphasize that our holding concerns only the statute of limitations on the State's right to bring an action for support against Thurman under this particular statute. The statute of limitations here clearly does not preclude the State from collecting any support which Misty may receive and does not preclude the child from bringing an action for support on its own behalf, or by its next friend, as otherwise provided by law.

Thus, we reverse on this issue and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BAKER and SULLIVAN, JJ., concur.