Joseph OLEJNICZAK, Appellant–
Plaintiff,

v.

TOWN OF KOUTS, Indiana, and the
Kouts Town Council, Elaine Martin,
David Brooks, Don Miller, Donna Wer-
ner and Thomas Oswald, Individually
and in His Capacity as the President of
Kouts Town Council, Appellees–Defen-
dants.

No. 64A04–9410–CV–407.

Court of Appeals of Indiana.

June 30, 1995.

Transfer Denied Nov. 14, 1995.

John M. Vouga, Portage, Hugo E. Martz, Peter L. Boyles, Valparaiso, for appellant.

John E. Hughes, Todd A. Leeth, Jonathan R. Hanson, Hoeppner, Wagner & Evans, Valparaiso, for appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Joseph Olejniczak appeals from an order of the Porter Circuit Court denying his motion for judicial review and declaratory and injunctive relief in an action challenging his termination as Town Marshal by the Defendants–Appellees, Town of Kouts, Indiana, and the Kouts Town Council.

We affirm.

### ISSUE

Olejniczak presents one issue for our review which we restate as: Whether a Town Marshal may be reduced in grade without a hearing and procedural due process pursuant to IND. CODE 36–5–7–1 et seq. and I.C. 36–8–3–4 (1993).

### FACTS AND PROCEDURAL HISTORY

Olejniczak was employed by the Town of Kouts as Town Marshal in January, 1989. He served in this capacity for approximately five and one-half years until he was demoted to the position of Deputy Town Marshal in the summer of 1994. During all relevant times the Kouts Town Council was comprised of four duly elected members: Thomas Oswald, Donna Werner, David Brooks and Don Miller.

In January, 1994, the Town Council began accepting applications for a new Town Marshal. Olejniczak did not apply. Preliminary interviews limited the candidates to three. The three finalists were interviewed at a public meeting on June 27, 1994. Joseph Kirk was ultimately selected and hired as the new Town Marshal, effective 12:01, September 1, 1994. At a public meeting on August 22, 1994, Thomas Oswald, President of the Town Council reduced Olejniczak in grade from Town Marshal to Deputy Marshal effective midnight August 31, 1994. The Town Council then voted 3–1 to ratify Olejniczak's reduction in grade.

Olejniczak brought an action for judicial review and declaratory and injunctive relief to challenge his "termination" as Town Marshal. He alleged therein that he was "demoted" without the procedural due process required by I.C. 36–8–3–4(c). The following day, the court issued a temporary restraining order prohibiting the Town Council from taking any action against Olejniczak. The Town Council indicated in its answer that it was relying on I.C. 36–8–3–4(m) in "demoting" Olejniczak and moved to dissolve the temporary restraining order.

After ·hearing argument, the trial court entered its order setting aside its previously issued restraining order and denying Olejniczak relief. The pertinent portions of the court's order is reproduced below:

> The provisions of I.C. 36–8–3–4(a) provide that application of the statute apply to *all towns.*. This statute is sometimes referred to as the "tenure statute" applying to policemen and firemen so as to give them some means of protection from arbitrary dismissal and/or suspension in their employment. The procedure for such action is as outlined by statute.
>
> In this case, the Plaintiff is arguing that the Town's action in removing him from the Town Marshal constitutes a termination thus entitling him to a hearing. "Termination" refers to a termination of employment. The Plaintiff's employment with the Town of Kouts has not been terminated. In fact, his pay remains the same. His duties and responsibilities have changed. Regardless of any title that the Plaintiff now carries as a result of the Town's action, the Plaintiff continues to be fully employed by the Town, his compensation is not affected, and as a member of the Police Department, he is fully protected from any dismissal, suspension or termination by the provisions of I.C. 36–8–3–4.
>
> The Plaintiff has no entitlement to remain in his upper level policy making position as

Town Marshal. Accordingly, the Town of Kouts had the legal authority to reduce in grade the Plaintiff's position. The Provisions of 36–8–3–4(m) provide that the reduction in grade of a police officer may be made without the adherence to the requirements of Subsection (b) through (*l*) of the statute. Plaintiff's assertion is that his reduction in grade to a rank below that which he held before his appointment to the upper level policy making decision position constitutes a termination since before becoming Town Marshal the plaintiff held no position. This is without merit. A reduction from Town Marshal to Deputy Town Marshal or any other *nomenclature* used is a greater rank than that held by the Plaintiff before his appointment as Town Marshal.

This case turns upon deciding between "The Right to the Position v. A Right to Employment." The Plaintiff has a right to employment pursuant to the statute (tenure, with removal only in accordance with the statute) but not a right to the upper level policy making position of Town Marshal. A Town Marshal has no protectible property interest in his rank which is an upper level policy making position and thus subject to demotion without hearing.

(R. 124–125). Olejniczak appeals from this decision. We heard oral argument on May 18, 1995.

### STANDARD OF REVIEW

When reviewing a trial court's determination on statutory construction, we are not bound by the trial court's interpretation, but rather must make an independent legal determination as to the meaning of the statute and its application to the instant facts. *Indiana State Prison v. Simchak* (1993), Ind. App., 615 N.E.2d 112, 114, *trans. denied.* Two statutory provisions covering the same general subject matter are *in pari materia* and should be construed together to produce a harmonious statutory scheme. *Goodman v. State* (1993), Ind.App., 611 N.E.2d 679, 684, *reh'g denied, trans. denied.* Furthermore, a statute should not be viewed as if the reader is peering at it through a keyhole. Rather it should be read and construed with its companion provisions. *Jones v. State* (1991), Ind.App., 569 N.E.2d 975, 978. We also must give effect and meaning to every word, if possible, and no part should be held meaningless if it can be reconciled with the rest of the statute. *Id.* at 978. When construing a statute, we must give words and phrases their plain, ordinary and usual meaning, unless a contrary purpose is clearly shown by the statute itself. *Jacobs v. State* (1994), Ind.App., 640 N.E.2d 61, 64, *reh'g denied, trans. denied.*

### DISCUSSION AND DECISION

#### I.

Olejniczak contends that the procedural due process provisions of I.C. 36–8–3–4 (the Policeman's Tenure Statute) and I.C. 36–5–7–3 (the Marshal Statute) are applicable to his situation and that the Town was not justified in reducing his position in grade without affording him notice and an opportunity to be heard. He contends that the trial court erred because it made no attempt to harmonize the Policeman's Tenure Statute and the Marshal Statute. Specifically, he argues that I.C. 36–5–7–1 provides that the Marshal statute applies to "all towns that have not abolished the office of town marshal" and because Kouts has not done so, I.C. 36–5–7–1 *et seq.* does apply.[1] Quite simply, Olejniczak asks us to construe the two statutes so that the Marshal Statute adopts the procedural aspect of the Disciplinary Statute, but not the substantive provisions of the Disciplinary Statute, including subsection (m) upon which Kouts relies. We now turn to the relevant statutory authority.

#### A. Statutory Authority

I.C. 36–5–7–1 (1988) provides that "[t]his chapter applies to all towns that have not abolished the office of town marshal." I.C. 36–5–7–2 (1988) provides that "[t]he town legislative body shall appoint a town marshal and fix his compensation." I.C. 36–5–7–3 (1988) provides as follows:

The Marshal serves at the pleasure of the town legislative body. However, before

---

1. *See* I.C. 36–8–9–2 which provides the procedure for abolition of the office of town marshal and the establishment of a board of metropolitan police commissioners. (1993).

terminating or suspending a marshal who has been employed by the town for more than six (6) months after completing the minimum basic training requirements ... the legislative body must conduct the disciplinary removal and appeals procedure prescribed by IC 36–8 for city fire and police departments.

I.C. 36–8–3–4(a) provides that "[t]his section also applies to all towns and townships that have full-time, paid police or fire departments." Subsections (b) through (*l*) require certain due process procedures be afforded to a police or fireman before being suspended, dismissed or demoted. However, subsection (m) provides as follows:

> The executive may reduce in grade any member of the police or fire department who holds an upper level policy making position. The reduction in grade may be made without adhering to the requirements of subsections (b) through (*l*). However, a member may not be reduced in grade to a rank below that which the member held before the member's appointment to the upper level policy making position.

■ The Town of Kouts contends that a town marshal may be reduced in grade without cause and without the procedural due process protections set forth in the Disciplinary Statute, I.C. 36–8–3–4(c). We agree and conclude that the chief police officer of a department, whether it be a metropolitan police commission system or a marshal system, does not possess a common law entitlement to the position.

### B. Legislative History

A historic understanding of how the legislature first provided due process to city police officers, then extended it to town marshals and deputies, and ultimately brought both positions under a common statutory scheme is required for a proper resolution of this case.

### 1. The Disciplinary Statute
### I.C. 36–8–3–4

The first legislation to provide due process protections to policemen and firemen regarding disciplinary actions and removal was enacted in 1905. Acts 1905, c. 129, s. 160. Section 160 expressly applied to "[e]very member of the fire and police forces, and all other appointees of the commissioners of public safety." In 1933 section 160 was amended to provide more detail regarding the notice requirement and appeal procedure. Acts 1933, c. 86, s. 160. In 1935, the statute was again amended to add police radio, police signal and fire alarm operators to the class of protected persons. Acts 1935, c. 282, s. 160.

In 1971, the Acts of Indiana were recodified into the Indiana Code. The disciplinary statute was recodified at I.C. 18–1–11–3. Pub.L. No. 252, 1971. In 1977, the statute was again amended to exclude fire and police chiefs from the due process protections provided in the statute. Thus, by express statutory language, the police or fire chief could be removed from office or reduced in grade without notice and a hearing pursuant to the 1977 amendment.[2]

In 1980, the disciplinary statute was again amended to provide in subsection (g) that

> [t]he mayor may reduce in grade any member of the fire or police force who holds an upper level policymaking position. This reduction in grade may be made without adhering to the requirements of (a)(3) through (f) of this section [the due process protections]. However, a member may not be reduced in grade to a rank below that which he held prior to his appointment to the upper level policymaking position.

I.C. 18–1–11–3(g), P.L. 128, 1980. In 1981, the law regarding local government was recodified in Title 36 of the Indiana Code. P.L. 309, 1981. I.C. 18–1–11 was repealed with I.C. 36–8–3–4 replacing it. The new codification modified I.C. 18–1–11–3(g) the prior sec-

---

**2.** Apparently, the same exception applied under Indiana common law. *See City of New Haven v. LeFever* (1968), 143 Ind.App. 88, 238 N.E.2d 487 (We held that a city could not remove the chief of police from the police force without notice and a hearing pursuant to section 160 of the Acts of Indiana. However the case did not expressly go on to hold that the City could not "demote" LeFever from chief of police to police officer. LeFever was reinstated as a member of the police force only).

tion on upper level policymaking positions as follows:

"Upper level policymaking position" refers to each position held by the police chief or fire chief and to each position held by the members of the police department or fire department in: (1) the next rank and pay grade immediately below the chief, if the authorized size of the department is more than ten (10) but less than fifty-one (51) members, . . .

P.L. 309, 1981 (now codified at I.C. 36–8–1–12). Also, I.C. 36–8–3–4 (formerly I.C. 18–1–11–3) was modified to expressly state that the disciplinary statute applied to towns, as well as cities:

(a) This section applies to all towns and townships that have full time, paid police and fire departments.

.     .     .     .     .

(b) Except as provided in subsection (m), a member of the police or fire department holds office or grade until he is dismissed or demoted by the safety board.

.     .     .     .     .

(m) The executive [3] may reduce in grade any member of the police or fire department who holds an upper level policymaking position. The reduction in grade may be made without adhering to the requirements of subsections (b) through ($l$) of this section. However, a member may not be reduced in grade to a rank below that which he held before his appointment to the upper level policymaking position.

P.L. 309, 1981 (now codified at I.C. 36–8–3–4).

### 2.  The Marshal Statute
### I.C. 36–5–7–1 *et seq.*

Prior to the recodification of the Acts of Indiana in 1971, the Marshal Statute afforded no due process protection to Town Marshals providing as follows:

The board of trustees of every town not operating under the metropolitan police department system shall appoint a marshal who shall serve during the pleasure of the board and whose salary shall be fixed by the board.

.     .     .     .     .

The town marshal, in towns having such an officer, shall be the chief police officer of the town; he may also be required to act as street commissioner and chief of the fire force, or either.

Acts 1969, c. 252, s. 214, 218. When the Marshal Statute was recodified in 1971 at I.C. 18–3–1–16, it remained essentially unchanged. In 1979 the Marshal Statute was amended significantly in subsection (d):

The board of trustees of every town not operating under the metropolitan police department system shall appoint a marshal who shall serve during the pleasure of the board and whose salary shall be fixed by the board. However, before terminating or suspending any marshal or deputy marshal who has satisfied the basic requirements of the law enforcement board, and who has been employed by the town for more than six (6) months after completing the basic training requirements, the board of town trustees must follow the disciplinary removal and appeals procedures prescribed in IC 18–1–11–3.

P.L. 170, 1979. Thus, the legislature made clear that the procedure as outlined in the Disciplinary Statute was to apply also to Town Marshals.

In 1980, the Marshal Statutes were repealed and recodified at I.C. 36–5–7–3. P.L. 212, sec. 4, 1980. I.C. 36–5–7–3 was amended as follows:

The Marshal serves at the pleasure of the town legislative body. However, before terminating or suspending a marshal or deputy marshal who has been employed by the town for more than six (6) months after completing the minimum basic training requirements adopted by the law enforcement training board under IC 5–2–1–9, the legislative body must conduct the disciplinary removal and appeals proce-

---

**3.**  Note also in 1981 that the legislature changed the word "mayor" in I.C. 36–8–3–4(m) to "exec-  utive" further indicative of the legislative intent.

dures prescribed by IC 36–8 for city fire and police departments.

## II.

We agree with the trial court in its assessment that the dispositive issue in this case is whether Olejniczak has a right to the position as Town Marshal or merely a right to employment as a Deputy Town Marshal. We further agree with the trial court's conclusion that Olejniczak is not entitled to his position as Town Marshal.

■ Based on our review of the legislative history, we conclude that the chief police officer of a department holds an "upper level policymaking position" pursuant to the Disciplinary Statute, and that the town marshal is the chief police officer of the town. Therefore, I.C. 36–8–3–4(m) applies and permits the reduction in grade of a marshal as chief police officer of the town, as he is in an upper level policymaking position, and he need not be afforded procedural due process. I.C. 36–5–7–3 incorporates by reference both the procedural and the substantive provisions of I.C. 36–8–3–4.

Furthermore, Olejniczak's reduction in grade was accomplished in compliance with subsection (m), which provides that "a member may not be reduced in grade to a rank below that which the member held before the member's appointment to the upper level policymaking position." I.C. 36–8–3–4(m). Because Olejniczak held no position in the Kouts Police Department prior to his appointment as Marshal, the statute has been fully complied with.

■ The action taken against Olejniczak was a non-disciplinary reduction in grade or a "demotion." The only difference between the time Olejniczak was a Marshal and his service now as Deputy Marshal, is that as Deputy Marshal he no longer possesses his discretionary administrative and supervisory duties of overseeing the department. In all other respects, his employment with the Town of Kouts, including his pay and his law enforcement powers, remain the same.

Certainly however, as Deputy Marshal, Olejniczak is now entitled to the same protections as any other police officer. Olejniczak

has a right to employment pursuant to the Policeman's Tenure Statute which affords protection from arbitrary termination and suspension. The procedural safeguards provided are clearly articulated in the statute. It is undisputed that prior to Olejniczak's removal as Town Marshal, he had served in that capacity for approximately five and one-half years, and that he had successfully completed the Indiana Law Enforcement Training Academy. Thus, he fulfills the requisite criteria for protection pursuant to I.C. 36–5–7–1 *et seq. See Howard v. Incorporated Town of North Judson* (1994), Ind.App., 644 N.E.2d 592 (Relying on I.C. 36–8–3–4(c), we held that Deputy Town Marshal's termination was void due to the Town's failure to adhere to the notice and hearing requirements in the Disciplinary Statute).

### CONCLUSION

We conclude that I.C. 36–5–7–3 adopts the procedural as well as the substantive provisions of I.C. 36–8–3–4, including subsection (m). Olejniczak was legally reduced in grade by the President of the Town Council or Executive, as expressly authorized by I.C. 36–8–3–4(m).

Accordingly, the trial court is affirmed in all respects.

CHEZEM and FRIEDLANDER, JJ., concur.