# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 23 2019, 9:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Laura Nirenberg
E. Anne Benaroya
Center for Wildlife Ethics, Inc.
La Porte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Center for Wildlife Ethics, Inc., <br> *Appellant*, <br><br> v. <br><br> Cameron F. Clark, in his official capacity as Director of the Indiana Department of Natural Resources, <br> *Appellee*. | April 23, 2019 <br><br> Court of Appeals Case No. 18A-PL-2500 <br><br> Appeal from the La Porte Superior Court <br><br> The Honorable Michael S. Bergerson, Judge <br><br> Trial Court Cause No. 46D01-1711-PL-1931 |

**Brown, Judge.**

[1] Center for Wildlife Ethics, Inc., (the "Center") appeals the dismissal of its action against Cameron F. Clark in his capacity as Director of the Indiana Department of Natural Resources ("DNR"). We affirm.

*Facts and Procedural History*

[2] On November 16, 2017, the Center filed a Complaint for Declaratory Judgment, Emergency and Other Injunctive Relief. The complaint alleged that DNR published LSA Document #17-486(E) on November 8, 2017, as an emergency rule; that deer hunting seasons were from November 18, 2017 to December 3, 2017, and December 26, 2017 to January 7, 2018; and that DNR exceeded its authority when it used an emergency rule to permit rifle hunting of deer on public lands. LSA Document #17-486(E) indicated that it was an emergency rule and that the document expired on February 1, 2018, and it provided in part that 312 Ind. Admin. Code 9-3-3(c)(6) was superseded to include language that "A rifle, with the use of cartridges described in SECTION 2(b) of this document, [may be used] on publicly owned land."[1] Appellant's Appendix Volume 2 at 27. On November 21, 2017, the court denied the Center's request for emergency injunctive relief. On December 15, 2017, the

---

[1] 312 Ind. Admin. Code 9-3-3, titled "Equipment for deer hunting," provides:

(c) During the firearms season established in section 4(e) of this rule and the special antlerless season established in section 4(h) of this rule, an individual must hunt deer only with any of the following equipment:

\* \* \* \* \*

(6) A rifle, with the use of cartridges described in subsection (d)(4) only.

Center filed a motion for preliminary injunction and for temporary restraining order alleging that DNR refused to allow a member of its organization to enter Potato Creek State Park on November 27, 2017, because it allowed rifle hunting on the premises that day and the next day. On December 29, 2017, the court issued an order denying the Center's request for injunctive relief. On January 10, 2018, DNR filed a motion to dismiss arguing that LSA Document #17-486(E) would expire on February 1, 2018, and the matter was moot. The Center filed a response arguing the harm at issue is capable of repetition.

[3] On April 19, 2018, the Center filed a First Amended Verified Complaint for Declaratory Judgment and Injunctive Relief. The amended complaint states that the legislature made significant changes to Ind. Code § 14-22-2-8 in 2018 and abolished the private property limitation,[2] and that DNR lacks authority to use the emergency rule process in Ind. Code § 4-22-2-37.1[3] to implement Ind. Code § 14-22-2-8. An exhibit attached to the amended complaint includes LSA Document #18-279(E), which was an emergency rule effective July 2, 2018, and expiring January 1, 2019, and which indicated in part that, notwithstanding 312 Ind. Admin. Code 9-2-11 and 312 Ind. Admin. Code 8-2 and any other

---

[2] Ind. Code § 14-22-2-8 governs the use of a rifle to hunt deer and, as amended by Pub. L. No. 195-2017, § 7 (eff. July 1, 2017), and Pub. L. No. 39-2018, § 6 (eff. July 1, 2017), provides that DNR may adopt rules under Ind. Code §§ 4-22-2 to authorize the use of rifles on public property.

[3] Ind. Code § 4-22-2-37.1 governs the adoption of emergency rules.

provision governing hunting a wild animal within a state park,[4] individuals qualified under the emergency rule may hunt white-tailed deer on November 12, 13, 26, and 27, 2018, at nineteen sites and restricting access to the sites on those dates. On May 9, 2018, DNR filed a notice indicating that it had filed a notice of removal in the United States District Court for the Northern District of Indiana, South Bend Division. On July 12, 2018, the district court issued an order finding that the Center disclaimed any potential federal questions by representing that the amended complaint does not allege any violations of the federal constitution or federal law and remanding the case to the La Porte Superior Court.

[4] On July 24, 2018, DNR filed a motion to dismiss the amended complaint under Ind. Trial Rule 12(B)(6). DNR argued, citing Ind. Code § 14-22-2-6(d),[5] that it may use an emergency rule to effectuate a limited modification or suspension of its rules related to the taking of animals. It also argued that a temporary prohibition on entrance for safety reasons does not violate Indiana law. Following a hearing, the court entered an order on October 5, 2018, providing: "Given the adoption by the Indiana State Legislature of House Enrolled Act 1292/P.L. 195-2017 (made retroactive to July 1, 2017), [DNR's] Motion to

---

[4] 312 Ind. Admin. Code 9-2-11 states in part that "[a]n individual must not take or chase a wild animal, other than a fish, in a state park or a state historic site." 312 Ind. Admin. Code 8-2 provides general restrictions on the use of DNR properties.

[5] Ind. Code § 14-22-2-6 governs the adoption of rules to establish the length of seasons, the methods, means, and time of taking wild animals, and other necessary rules. Ind. Code § 14-22-2-6(d) provides: "The director may modify or suspend a rule for a time not to exceed one (1) year under IC 4-22-2-37.1."

Dismiss pursuant to Trial Rule 12(B)(6) should be GRANTED." Appellant's Appendix Volume 2 at 12.

## Discussion

The issue is whether the trial court erred in dismissing the Center's action. A motion to dismiss pursuant to Ind. Trial Rule 12(B)(6) tests the legal sufficiency of the complaint. *Price v. Ind. Dep't of Child Servs.*, 80 N.E.3d 170, 173 (Ind. 2017). The rule requires that we accept as true the facts alleged in the complaint. *Id.* We review 12(B)(6) motions de novo and will affirm a dismissal if the allegations are incapable of supporting relief under any set of circumstances. *Id.* We will also affirm a dismissal if the decision is sustainable on any basis in the record. *Id.*

The Center argues that DNR does not have legislative authority to adopt an emergency rule to permit rifle hunting of deer on state park and other public premises. The Center contends that, while Ind. Code § 14-2-22-8 as amended may authorize DNR to permit rifle hunting on public property, it does not allow DNR to "to exercise its newly-minted authority in the dark or to circumvent the public by failing to provide notice, opportunity to comment, and public hearings." Appellant's Brief at 19-20. In support of its position, the Center cites Ind. Code § 14-10-2-5 and argues that DNR's authorization to use emergency rules "expressly excludes the Controlled Hunts Statute and the Rifle-

Hunting Statute."[6] *Id.* at 20. In its reply brief, the Center states "[t]here is no question that [DNR] has authority to limit public access to state parks and historic sites when the activity that justifies denying access is one the agency has authority to permit on the premises and access is limited or denied for legitimate public safety reasons." Appellant's Reply Brief at 15-16 n.36.

DNR maintains that, with the amendment of Ind. Code § 14-2-22-8, the Center's original complaint became moot as it could no longer claim that DNR lacked authority to allow rifle hunting on public property. DNR argues that the claim in the Center's amended complaint fails because Indiana law permits it to adopt emergency rules to authorize the use of rifles on public property for deer hunting. DNR further contends, citing Ind. Code § 14-22-6-13, that its authorization of a controlled hunt must be under rules adopted under Ind. Code §§ 4-22-2; that Ind. Code § 14-22-2-8(e) permits it to adopt rules under Ind. Code §§ 4-22-2 to authorize the use of rifles on public property; and, citing Ind. Code § 14-22-2-6(d), that it may use an emergency rule to effect a limited modification or suspension of rules regarding the taking of wild animals. DNR also asserts that the Center's reliance on Ind. Code § 14-10-2-5 is misplaced and that the list in the statute is not exclusive, as shown by Ind. Code § 14-22-2-6(d) which separately allows it to adopt emergency rules under Ind. Code § 4-22-2-

---

[6] Ind. Code § 14-10-2-5 provides: "The department may adopt emergency rules under IC 4-22-2-37.1 to carry out the duties of the department under the following: . . . (11) IC 14-22-3, IC 14-22-4, and IC 14-22-5. . . ." The Center refers to Ind. Code § 14-22-2-8 as the rifle hunting statute and to Ind. Code § 14-22-6-13 as the controlled hunts statute.

37.1. It states that it has authority to control admission to state parks, and that "[e]mergency rules for deer hunting are necessary given that deer populations fluctuate and DNR must make new determinations every year whether a controlled hunt is necessary" and "[s]uch a flexible system for addressing deer over-population would not be possible through the lengthy proceedings required for regular rulemaking." Appellee's Brief at 14.

[8] To the extent we must interpret statutory language, if a statute is not susceptible to more than one interpretation, we must give the statute its clear and plain meaning. *Cook v. Atlanta, Ind. Town Council*, 956 N.E.2d 1176, 1178 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*. If a statute is susceptible to multiple interpretations, we attempt to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Id*. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id*. We will avoid an interpretation that renders any part of the statute meaningless or superfluous. *Id*. Where statutes address the same subject, we harmonize them if possible. *Parsley v. MGA Family Grp., Inc.*, 103 N.E.3d 651, 655 (Ind. Ct. App. 2018), *reh'g denied*.

[9] Ind. Code §§ 4-22-2 governs the adoption of administrative rules. Ind. Code § 4-22-2-37.1 relates to the adoption of an emergency rule, and Ind. Code § 4-22-2-37.1(b) provides that "[a] rule may be adopted under this section if a statute delegating authority to an agency to adopt rules authorizes adoption of such a rule: (1) under this section; or (2) in the manner provided by this section."

[10]     Ind. Code § 14-10-2-5 provides: "The department[7] may adopt emergency rules under IC 4-22-2-37.1 to carry out the duties of the department under the following: . . . (11) IC 14-22-3, IC 14-22-4, and IC 14-22-5. . . ."  Ind. Code § 14-19-1-2 provides DNR may make available to the public "under rules adopted by the department public parks and other suitable places for recreation, conservation, and management of natural and cultural resources" and "[c]onstruct, rent, lease, license, or operate public service privileges and facilities in a state park."  312 Ind. Admin. Code 8-5-3 provides that "[a] property manager or another authorized representative may require a person to leave a DNR property or may otherwise restrict a person's use of a DNR property" and "[a]n ejection or restriction imposed under this section may be made applicable to all or a portion of particular DNR property, to multiple DNR properties, or to all DNR properties."

[11]     Ind. Code §§ 14-22 governs fish and wildlife, and Ind. Code §§ 14-22-2 relate to the Division of Fish and Wildlife.  Ind. Code § 14-22-2-3 states the director shall "[p]rovide for the protection, reproduction, care, management, survival, and regulation of wild animal populations regardless of whether the wild animals are present on public or private property in Indiana" and "[o]rganize and pursue a program of research and management of wild animals that will serve the best interests of the resources and the people of Indiana."  Ind. Code § 14-

_____

7 Ind. Code § 14-8-2-67 provides: "'Department', except for purposes of IC 14-20-7 and IC 14-32, refers to the department of natural resources."

22-2-4 states the director shall issue required licenses and permits. Ind. Code §
14-22-2-5 provides the director or the director's representative may enter into or
upon private or public property for the purposes of managing and protecting a
wild animal found upon or within the property and killing or removing a wild
animal that is considered a nuisance or detrimental to overall populations.

[12]     Ind. Code § 14-22-2-6, titled "Adoption of rules," provides:

> (a) The director shall adopt rules under IC 4-22-2 to do the
> following:
>
> > (1) Establish, open, close, lengthen, suspend, or shorten
> > seasons.
> >
> > (2) Establish bag, sex, and size limits.
> >
> > (3) Establish limitations on the numbers of hunters and
> > fishermen.
> >
> > (4) Establish the methods, means, and time of:
> >
> > > (A) taking, chasing, transporting, and selling; or
> > >
> > > (B) attempting to take, transport, or sell;
> >
> > wild animals or exotic mammals, with or without dogs, in
> > Indiana or in a designated part of Indiana.
> >
> > (5) Establish other necessary rules to do the following:
> >
> > > (A) Administer this chapter.
> > >
> > > (B) Properly manage wild animals or exotic mammals
> > > in a designated water or land area of Indiana.
> >
> > (6) Set aside and designate land or water or parts of the land
> > or water owned, controlled, or under contract or acquired by
> > the state for conservation purposes as a public hunting and

fishing ground under the restrictions, conditions, and limitations that are determined to be appropriate.

* * * * *

(d) *The director may modify or suspend a rule for a time not to exceed one (1) year under IC 4-22-2-37.1.*

(Emphasis added).

Ind. Code § 14-22-2-8 provides in part:

(b) A hunter may use a rifle to hunt deer on privately owned land subject to the following:

(1) The use of a rifle is permitted during hunting seasons established by the department.

(2) The rifle must be chambered for a cartridge that fires a bullet that is two hundred forty-three thousandths (.243) of an inch in diameter or larger.

(3) The rifle must fire a cartridge that has a minimum case length of one and sixteen-hundredths (1.16) inches, but is no longer than three (3) inches.

(4) A hunter may not possess more than ten (10) cartridges for the rifle while hunting deer under this section.

(5) The rifle must meet any other requirements established by the department.

(c) The use of a full metal jacketed bullet to hunt deer is unlawful.

(d) The department shall report on the impact of the use of rifles to hunt deer under this section to the governor and . . . the general assembly before February 15, 2020.

(e) *The department may adopt rules under IC 4-22-2 to authorize the use of rifles on public property.*

(f) This section expires June 30, 2020.

(Emphasis added). *See* Pub. L. No. 39-2018, § 6 (eff. July 1, 2017) (amending Ind. Code § 14-22-2-8 to insert current subsection (e)).

[14] Further, Ind. Code § 14-22-6-13, titled "Controlled hunts within state parks and historic sites," provides:

> If the director:
>
>> (1) determines that a species of wild animal present within a state park or historic site poses an unusual hazard to the health or safety of one (1) or more individuals;
>>
>> (2) determines, based upon the opinion of a professional biologist, that it is likely that:
>>
>>> (A) a species of wild animal present within a state park or historic site will cause obvious and measurable damage to the ecological balance within the state park or historic site; and
>>>
>>> (B) the ecological balance within the state park or historic site will not be maintained unless action is taken to control the population of the species within the state park or historic site; or
>>
>> (3) is required under a condition of a lease from the federal government to manage a particular wild animal species;
>
> the director shall authorize the taking of a species within the state park or historic site under rules adopted under IC 4-22-2.

[15] While Ind. Code § 14-22-2-8 related to use of a rifle to hunt deer and Ind. Code § 14-22-6-13 related to controlled hunts in a state park do not specifically reference Ind. Code § 4-22-2-37.1, both statutes authorize DNR to adopt rules

under Ind. Code §§ 4-22-2. Ind. Code § 14-10-2-5 does not state that its list of statutory provisions for which DNR may adopt emergency rules is an exclusive list. Ind. Code § 14-22-2-6(d) provides for the adoption of rules to establish, among other things, the methods and means of taking wild animals as well as to designate land controlled by the state as a public hunting ground under conditions determined to be appropriate, and the statute expressly authorizes DNR to temporarily modify or suspend a rule pursuant to Ind. Code § 4-22-2-37.1. LSA Document #17-486(E) temporarily superseded portions of 312 Ind. Admin. Code 9-3-3 governing equipment for deer hunting, and LSA Document #18-279(E) temporarily superseded 312 Ind. Admin. Code 9-2-11 to permit deer hunting on four days at certain sites. Both 312 Ind. Admin. Code 9-3-3 and 312 Ind. Admin. Code 9-2-11 were authorized by Ind. Code § 14-22-2-6. Based upon the record, we conclude the trial court did not err in dismissing the Center's amended complaint.

[16] For the foregoing reasons, we affirm the judgment of the trial court.

[17] Affirmed.

Bailey, J., and Bradford, J., concur.